1  IVY GAGE, ESQ.
   Nevada Bar No. 5958
2  igage@gagelawfirm.com
   DANIAL O. LAIRD, M.D., J.D.
3  Nevada Bar No. 11831
   dlaird@gagelawfirm.com
4  THE GAGE LAW FIRM, PLLC
   Summergate Corporate Center
5  7674 W. Lake Mead Boulevard, Suite 108
   Las Vegas, Nevada 89128
6  (702)869-0800/(702)869-0900 (fax)
   Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9                   DISTRICT OF NEVADA

10  MARCO ANTONIO AGUILAR and          )
    OLALLA KENDY AGUILAR,              )
11  Individually and as Natural Parents )
    and Guardians of I.K.A, a minor,   )
12                                     )
            Plaintiffs,                )
13                                     )   Case No.    2:16-cv-00153-JCM-CWH
    vs.                                )
14                                     )
    THE UNITED STATES OF AMERICA,      )   ORDER APPROVING SETTLEMENT ON
15                                     )   BEHALF OF MINOR
            Defendant.                 )
16  _____   )

17

18

19  This matter is before     the Court as to the reasonableness of a settlement between the

20  United States of America and I.K.A., a minor, by her natural parents and guardians, Marco

21  Antonio Aguilar and Olalla Kendy Aguilar, Marco Antonio Aguilar, Individually, and Olalla

22  Kendy Aguilar, Individually, by and through their attorneys.

23          The complete and precise terms and conditions of the proposed settlement are set

24  forth in the Stipulation For Compromise Settlement and Release of Federal Tort Claims Act

25  Claims Pursuant to 28 U.S.C. § 2677 ("Stipulation") and the Irrevocable Reversionary Inter

26  Vivos Grantor Medical Care Trust for the Benefit of I.K.A. ("Reversionary Trust"), attached

27  as Exhibits "1" and "2". The Court has reviewed the Stipulation and the Reversionary

1  Trust, and, if necessary, taken testimony and heard arguments in favor of this settlement.
2  The Court is fully informed of the specifics of the full and final terms and conditions of the
3  settlement, including the necessity of approval by the Department of Justice.

4      The Court finds that the terms and conditions of this settlement, as set forth in the
5  Stipulation and Reversionary Trust are fair, reasonable, and in the best interests of I.K.A.,
6  a minor.

7      IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

8  1.   That the settlement, as set forth in Exhibits "1" and "2", is hereby approved
9        as fair, reasonable and in the best interests of I.K.A.

10  2.   That future periodic payments will be made payable to the Irrevocable
11       Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of I.K.A.,
12       said payments to be provided through the issuance of an annuity policy from
13       an annuity company(ies), rated at least "A" by A.M. Best Ratings service, all
14       as more fully described and in accordance with the terms and conditions of
15       the Stipulation For Compromise Settlement and Release, which has been
16       approved by the Court.

17  2.   Attorneys' fees in the amount of One Million Two Hundred Fifty Thousand
18       Dollars ($1,250,000.00) are approved for Plaintiffs' counsel.

19  3.   Repayment to Plaintiffs' counsel for case related costs and expenses in the
20       amount of Eighty Seven Thousand Seven Hundred Seventy Five Dollars and
21       Seventy Five Cents ($87,775.75) is approved.

22  4.   Repayment of medical subrogation lien to The Loomis Company in the
23       amount of $169,329.33 is approved.

24  . . . .
25  . . . .
26  . . . .
27  . . . .

The Gage Law Firm, PLLC
Summergate Corporate Center
7674 W. Lake Mead Boulevard, Suite 108
Las Vegas, Nevada 89128
Phone: 702/869-0800 Fax: 702/869-0900

Page 2 of 3

5.    Payment to MARCO ANTONIO AGUILAR and OLALLA KENDY AGUILAR, Individually, in the amount of Three Hundred Ninety Two Thousand Eight Hundred Ninety Four Dollars and Ninety Two Cents($392,894.92) is approved.

**IT IS SO ORDERED.**

**UNITED STATES DISTRICT COURT JUDGE/**
**UNITED STATES MAGISTRATE JUDGE**

**DATED:** June 19, 2017 _____

**THE GAGE LAW FIRM. PLLC**

By: _____
**IVY GAGE, ESQ.**
**DANIAL O. LAIRD, ESQ.**
7674 W. Lake Mead Blvd., Ste. 108
Las Vegas, Nevada 89128
Attorneys for Plaintiffs

The Gage Law Firm, PLLC
Summergate Corporate Center
7674 W. Lake Mead Boulevard, Suite 108
Las Vegas, Nevada 89128
Phone: 702/869-0800 Fax: 702/869-0900

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

MARCO ANTONIO AGUILAR and
OLALLA KENDY AGUILAR, individually
and as Natural Parents and Guardians of
I.K.A., a minor,

       Plaintiffs,

v.

UNITED STATES OF AMERICA

       Defendant.

Case No.  2:16-cv-00153-JCM-CWH

## STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the undersigned Plaintiffs (meaning any person, other than the defendant, the parties' attorneys, and the settlement broker, signing this agreement waiving and releasing claims, whether or not a party to this civil action), and the Defendant, United States of America, including its agents, servants, and employees (hereinafter "United States"), collectively, "the parties," by and through their respective attorneys, as follows:

1. The parties to this Stipulation for Compromise Settlement and Release (hereinafter "Stipulation") do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, including claims for wrongful death, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation.

2. This Stipulation is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to Plaintiffs. This settlement is entered into by all

parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3. In consideration for Plaintiffs' agreement to accept the terms and conditions of this settlement, the United States agrees to pay the cash sums set forth below in Paragraph 3.a., to purchase the annuity contract described below in Paragraph 3.b., and to establish the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of . ℐ. ĸ. ₳. (hereinafter "Reversionary Trust") described below in Paragraph 3.c.

a. Within three business days after counsel for the United States receives (1) this Stipulation signed by all parties to said document; (2) the Reversionary Trust signed by all parties to said document; (3) the Social Security numbers or tax identification numbers of Plaintiffs and their attorneys; (4) an Order approving the settlement on behalf of ' ℐ. ĸ.₳ ; and (5) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will send a formal request to the United States Department of the Treasury requesting that the sum of Five Million Dollars ($5,000,000.00) (hereinafter "Settlement Amount") be expeditiously sent by electronic funds transfer (EFT) to the Client Trust Account of AEC Financial, Inc. (hereinafter "AEC Financial").

Within five business days after AEC Financial has 1) been notified by its bank that the Settlement Amount has been deposited and 2) received from Plaintiffs' counsel the birth certificate and social security card of ℐ. ĸ. ₳ , AEC Financial agrees to distribute the Settlement Amount, as provided below in subparagraphs 3.a.(1) and 3.a.(2).

(1) A check in the amount of One Million Nine Hundred Thousand Dollars ($1,900,000.00) (hereinafter "Upfront Cash") made payable to Marco Antonio Aguilar, Olalla Kendy Aguilar, and ℐ. ĸ. ₳ a minor, by and through her natural parents and

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
Page 2 of 19

guardians, Marco Antonio Aguilar and Olalla Kendy Aguilar, and delivered to the United States Attorney's Office for the District of Nevada to hold until Plaintiffs have obtained an Order from the United States District Court for the District of Nevada dismissing this action in its entirety with prejudice, with each party to bear its own costs, expenses, and fees, and expressly not retaining jurisdiction over the above-captioned action, this settlement, or the United States. Upon entry of said Order, the United States will tender said check to Plaintiffs' attorneys.

With respect to the payment of the Upfront Cash, Plaintiffs stipulate and agree that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Upfront Cash into a qualified settlement fund or an equivalent fund or account. Plaintiffs further stipulate and agree that they, their attorney(s), any Guardian Ad Litem, and their representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfront Cash into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.a.(1) precludes Plaintiffs from purchasing standard, non-structured settlement annuities after Plaintiffs have cashed the Upfront Cash settlement check, but they agree that they will not represent to any person, entity, or agency that they are purchasing structured settlement annuities and they agree they will not attempt to purchase such structured settlement annuities.

Plaintiffs agree to endorse the Upfront Cash check over to their attorney to be deposited in their attorney's client trust account to facilitate the disbursement of the Upfront Cash as authorized by the approving court.

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)                                    Page 3 of 19

(2)   For the funding of the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of ⫯.ᴋ.ᴀ described below in Paragraph 3.c., the sum of Three Million One Hundred Thousand Dollars ($3,100,000.00) (hereinafter "Trust Funding Amount") to be distributed by AEC Financial, Inc. as follows:

(a)   Pay to an annuity company(ies), rated at least A by A.M. Best rating service, the sum of Two Million Eight Hundred Thousand Dollars ($2,800,000.00) to purchase the installment refund annuity contract described in paragraph 3.b. below.

(b)   Pay to the Reversionary Trust, the sum of Three Hundred Thousand Dollars ($300,000.00).

The parties agree that any attorneys' fees owed by Plaintiffs in their Federal Tort Claims Act suit against the United States shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The parties further agree that any such attorneys' fees, along with Plaintiffs' costs and expenses of this action against the United States and their costs, expenses, and fees (including all fees of any legal Guardian Ad Litem) associated with obtaining court approval of this settlement on behalf of ⫯.ᴋ.ᴀ. , shall be paid out of the Upfront Cash paid pursuant to paragraph 3.a.(1) above, and not in addition thereto. Plaintiffs agree to pay all the costs, expenses, and Guardian Ad Litem fees associated with obtaining court approval of the settlement on behalf of ⫯.ᴋ.ᴀ. . The parties agree that any fees, including fees of any legal Guardian Ad Litem, incurred in providing legal services in this matter and in any court proceedings reviewing the settlement for approval purposes shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678.

Plaintiffs stipulate and agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement, including any

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
                              Page 4 of 19

past, present, and future liens or claims for payment or reimbursement by any individual or entity, including an insurance company, Medicaid (including State of Nevada), and Medicare, arising from the injuries that are the subject matter of this action. Plaintiffs stipulate and agree that they will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. Plaintiffs and their attorney represent that, as of the date they sign this Stipulation, they have made a diligent search and effort to determine the identity of any individual or entity that has or may have a lien or a claim for payment or reimbursement arising from the injuries that are the subject matter of this action. Plaintiffs agree that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by Plaintiffs, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder or Plaintiff has waived and released such lien or claim. The evidence required by the terms of this Paragraph may be satisfied by a letter from Plaintiffs' attorney representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder or Plaintiff has waived and released such lien and claim.

b. The United States will purchase an installment refund annuity contract to make periodic payments on the following terms and conditions:

(1) The installment refund annuity contract will pay to the Reversionary Trust the sum of $4,143.46 per month, beginning one month from the date of purchase of the annuity and continuing for the life of     I.K.A.     and the installment refund period. The monthly payments shall increase by 3 percent compounded annually, beginning after the first year of monthly payments. In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the monthly annuity payments set forth above shall be adjusted downward or

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
Page 5 of 19

upward to ensure that the premium cost of the annuity contract is equal to Two Million Eight
Hundred Thousand Dollars ($2,800,000.00) and not more or less than that amount. The monthly
annuity payments are based upon the date of birth for i    I.K.A.    of April 3, 2014 that
was provided by Plaintiffs.

(2) Upon the death of    I.K.A.    any installment refund period payments
remaining shall be paid to the United States Treasury f/b/o    I.K.A    and sent to the
Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin
Franklin Station, Washington D.C. 20044, or upon written notice, any subsequent change of
address.

(3) The annuity contract being purchased pursuant to this Paragraph 3.b. will be owned
solely and exclusively by the United States and will be purchased through AEC Financial as
specified above in Paragraph 3.a. The parties stipulate and agree that the United States' only
obligation with respect to an annuity contract and any annuity payments therefrom is to purchase
said contract, and they further agree that the United States does not guarantee or insure any of the
annuity payments. The parties further stipulate and agree that the United States is released from
any and all obligations with respect to an annuity contract and annuity payments upon the purchase
of said contract.

(4) The parties stipulate and agree that the annuity company that issues an annuity
contract shall, at all times, have the sole obligation for making all annuity payments. The
obligation of the annuity company to make each annuity payment shall be discharged upon the
mailing of a valid check in the amount of such payment to the address designated by the party to
whom the payment is required to be made under this Stipulation. Payments lost or delayed

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
                              Page 6 of 19

through no fault of the annuity company shall be promptly replaced by the annuity company, but the annuity company is not liable for interest during the interim.

(5) The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject to execution or any legal process for any obligation in any manner, and that Plaintiffs shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

(6) Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, to notify the annuity company and the United States of the death of ¦ ⅉ.ᴋ.ᴀ ⸱ within ten (10) days of death and to provide a certified death certificate within thirty (30) days of death.

c. The United States will establish, as the Grantor, the Reversionary Trust on the following terms and conditions:

(1) The parties agree to the terms, conditions, and requirements of the Reversionary Trust, a copy of which is attached hereto and incorporated by reference.

(2) Plaintiffs and Plaintiffs' successors, assigns, guardians, and guardians ad litem, if any, agree that the Trust Beneficiary and anyone acting on behalf of the Trust Beneficiary has the duty and responsibility to cooperate with the Administrator and Trustee of the Trust to the extent the Administrator and the Trustee determine that the Beneficiary's cooperation is necessary or useful for them to carry out their respective duties and responsibilities. Plaintiffs and Plaintiffs' successors, assigns, guardians, and guardians ad litem, if any, further agree that the Beneficiary has the duty and responsibility to: submit requests for payment of allowable benefits as required

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 7 of 19

by the Trust; provide signatures, authorizations, documentation, or information necessary for the carrying out of the terms of the Trust; identify other sources of payments or benefits; apply to other sources of payments or benefits for coverage; to assist the Administrator and Trustee in obtaining payments or reimbursement from other sources of payments or benefits; and transmit to the Trust Estate any amount received by (or on behalf of the Beneficiary) from another source of payments or benefits in reimbursement for, or payment of, an expense that has been paid or will be paid from the Trust Estate. The parties agree that the failure of the Beneficiary to comply with these duties may result in the denial, in whole or part, of payments from the trust estate, depending on the terms of the Reversionary Trust.

(3) Plaintiffs and Plaintiffs' heirs, executors, administrators, and assigns shall maintain with the administrator, the trustee, and the United States a current mailing address, and shall notify the administrator, the trustee, and the United States of any event upon which the right of payments from the trust estate may depend, including the death of I.K.A. , within ten (10) days of the date of such event, and shall provide the administrator, the trustee, and the United States with a certified death certificate within thirty (30) days of the death of I.K.A.

(4) Upon the death of I.K.A the trustee shall, to the extent authorized by the terms of said Reversionary Trust, pay allowable charges, expenses, and benefits, and liquidate and distribute the remaining trust estate to the United States by check made payable to the United States Treasury f/b/o I.K.A. and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington D.C. 20044, or, upon written notice, any subsequent change of address.

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)                                     Page 8 of 19

4. Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns hereby accept the sums set forth above in Paragraph 3.a, the purchase of the installment refund annuity contract set forth above in Paragraph 3.b, and the establishment of the Reversionary Trust set forth above in Paragraph 3.c., in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including any future claims for survival or wrongful death, and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, including the death of I. K. A.                     , or damage to property, and the consequences thereof, which Plaintiffs or their heirs, executors, administrators, or assigns may have or hereafter acquire against the United States on account of the subject matter of that gave rise to the above-captioned action.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States from and against any and all claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, rights, subrogated interests, or contribution interests sound in tort, contract, or statute) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

Plaintiffs and their attorneys stipulate and agree that Plaintiffs, by and through their attorney, will satisfy or resolve any and all known claims for payment or reimbursement and any and all known liens asserted by any individual or entity before distributing to Plaintiffs any portion of the Upfront Cash paid pursuant to Paragraph 3.a.(1) above. Plaintiffs and their attorneys further agree that, no later than ninety (90) days from the date the United States has paid the Settlement Amount, Plaintiffs' attorney shall provide to the United States evidence that each

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 9 of 19

known claim or lien has been satisfied or resolved and that all lienholders and claimholders have waived and released all such liens and claims. The evidence required by the terms of this paragraph may be satisfied by a letter from Plaintiffs' attorney representing to counsel for the United States that each such lien or claim has been satisfied or resolved and that all lienholders and claimholders have waived and released such liens and claims.

5. This compromise settlement is specifically subject to each of the following conditions:

a. The Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation and the Reversionary Trust.

b. The parties must agree in writing to the terms, conditions, and requirements of this Stipulation and the Reversionary Trust. The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation or the Reversionary Trust. The terms, conditions, and requirements of this Stipulation and Reversionary Trust are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The parties must agree to the terms, conditions, and requirements of this Stipulation and the Reversionary Trust before the Torts Branch will seek settlement authority from the Attorney General or the Attorney General's designee.

c. I.K.A.                r must be alive at the time the annuity contract described above in Paragraph 3.b. is purchased and at the time the Reversionary Trust described in Paragraph 3.c. is deemed established, as defined in Article V of the Reversionary Trust. In the event of the death of I.K.A.         prior to the date the annuity contract is purchased or the date the

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 10 of 19

Reversionary Trust is deemed established, the entire Stipulation and compromise settlement are null and void.

      d.    Plaintiffs must obtain, at their expense, approval of the settlement by a court of competent jurisdiction on behalf of    I.K.A.        . The terms of any such Order, a draft of which shall be provided by the United States, are a condition of this settlement. Plaintiffs agree to obtain such approval in a timely manner: time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event such approval is not obtained in a timely manner. In the event Plaintiffs fail to obtain such court approval, the entire Stipulation and the compromise settlement are null and void. Plaintiffs must obtain such court Order before the Torts Branch will seek settlement authority from the Attorney General or the Attorney General's designee.

      e.    Plaintiffs must provide the United States with a complete set of the **extant** medical records of  I.K.A.      (including any independent medical examinations conducted for purposes of this litigation, any and all clinic visits, whether for routine checkups or for treatment and care for any medical condition, injury, disease, etc., any and all hospital and emergency room records, and any records of any diagnostic testing) for the 36-month period prior to the date Plaintiffs sign this Stipulation. Plaintiffs must provide all such **extant** medical records for said 36-month period before the Torts Branch will seek settlement authority from the Attorney General or the Attorney General's designee. As of the date they sign this Stipulation, Plaintiffs and their attorneys represent that they have conducted a due diligence search of all files, records, documents, and information in their possession or available to them, and that, after having conducted said due diligence search, they are unaware of, and have no knowledge of, any such extant medical records that were not previously been produced to the United States by Plaintiffs.

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
                          Page 11 of 19

In the event said records and reports reveal that ‾I‾·K‾·A‾. had or has any such

potentially life-threatening or life-shortening diseases or illnesses not caused by the medical care

at issue in this action, the United States reserves the right to elect not to consummate the settlement

and upon such election by the United States the entire settlement is null and void.

     f.  Plaintiffs must obtain a release and waiver of any claim or cause of action (whether

sounding in tort, contract, statute, or otherwise) that any alleged tortfeasor, if any, has or may have

in the future against the United States arising out of the subject matter of the above-captioned

action.  This condition is for the benefit of the United States exclusively.  The United States will

provide the form of Release and Waiver, or any changes to the form required by the United States,

to be used by Plaintiffs in obtaining a Release and Waiver from any alleged tortfeasor.  Before

the Torts Branch will seek settlement authority from the Attorney General or the Attorney

General's designee, Plaintiffs must provide the United States with either (i) all such releases and

waivers required by this Paragraph 5.f., or (ii) a written representation by Plaintiffs' attorney

stating that, after a diligent search of counsel's law firms' records and files, including expert and

consultant reports, and of Plaintiffs' records and files, Plaintiffs and their attorney are unaware of

any such potential tortfeasor.

     g.  In the event there are any currently known liens or claims for payment or

reimbursement, including any liens or claims by Medicaid (including the State of Nevada or other

state) or Medicare, arising out of the subject matter that gave rise to the above-captioned action,

whether disputed as legally valid or not, Plaintiffs must obtain a release and waiver from any State,

private entity, or private individual who claims to have such lien or claim.  For purposes of this

Stipulation, such lien or claim includes but is not limited to, a claim or cause of action for

reimbursement for any payments made to or on behalf of Plaintiffs or a claim or cause of action

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
Page 12 of 19

for reimbursement for any goods or services provided or furnished to or on behalf of Plaintiffs. Plaintiffs and their attorneys agree that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by Plaintiffs, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder or claimant has waived and released such lien or claim. The evidence required by the terms of this paragraph may be satisfied by a letter from Plaintiffs' attorneys representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder or claimant has waived and released such lien and claim.

h. The United States District Court for the District of Nevada must dismiss this action in its entirety with prejudice, with each side bearing its own costs, expenses, and fees, and with the District Court not retaining jurisdiction over the above-captioned action, this settlement or the United States.

6. The parties agree that this Stipulation and the Reversionary Trust, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

7. Compliance with all applicable Federal, state, and local tax requirements shall be the sole responsibility of Plaintiffs. This Stipulation is executed without reliance upon any representation by Defendant as to tax consequences, and Plaintiffs are responsible for the payment of all taxes that may be associated with the settlement. Further, nothing in this Stipulation waives or modifies Federal, state, or local laws pertaining to taxes, offsets, levies, and liens that may apply to this Stipulation or the Settlement Amount proceeds, and this Stipulation is executed without reliance on any representation by Defendant as to the application of any such law.

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)
Page 13 of 19

8.  Plaintiffs represent that they have read, reviewed and understand this Stipulation and Reversionary Trust, and that they are fully authorized to enter into the terms and conditions of this agreement and that they agree to be bound thereby. Plaintiffs further acknowledge that they enter into this Stipulation and Reversionary Trust freely and voluntarily. Plaintiffs further acknowledge that they have had sufficient opportunity to discuss this Stipulation and Reversionary Trust with their attorney, who has explained the documents to Plaintiffs, and that Plaintiffs understand all of the terms and conditions of this Stipulation and Reversionary Trust.

9.  It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

WHEREAS, the parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Executed this _____ day of _____, 2017.

UNITED STATES OF AMERICA
STEVEN W. MYHRE
Acting United States Attorney

BY:    _____
       LINDSY M. ROBERTS
       Assistant United States Attorney
       Office of the United States Attorney
       District of Nevada
       Attorneys for the United States

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)                                   Page 14 of 19

Executed this 3rd day of May 2017.

I ___I.K.A.___ a minor, Individually

Date of Birth: April 3, 2014

By: _Marco Antonio Aguilar_

    Marco Antonio Aguilar, as natural guardian and parent of   I.K.A.


Executed this 3rd day of May 2017.

I ___I.K.A.___ a minor, Individually

Date of Birth: April 3, 2014

By: _Ollala Kendy Aguilar_

    Ollala Kendy Aguilar, as natural guardian and parent of   I.K.A.

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

                          Page 15 of 19

Executed this 3ʳᵈ day of May 2017.
MARCO ANTONIO AGUILAR, INDIVIDUALLY

_(signature)_

Marco Antonio Aguilar, Individually

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 16 of 19

Executed this 3rd day of May 2017.
OLLALA KENDY AGUILAR, INDIVIDUALLY

_Ollala Aguilar_
Ollala Kendy Aguilar, Individually

*Aguilar v. United States*. 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 17 of 19

Executed this __3ʳᵈ__ day of __May__, 2017.
THE GAGE LAW FIRM, PLLC
ATTORNEY FOR PLAINTIFFS


IVY GAGE, ESQ.
THE GAGE LAW FIRM, PLLC
Attorney for Plaintiffs

*Aguilar v. United States,* 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 18 of 19

Executed this __2 ND__ day of __M AY__, 2017.
ROGER COOPER
Settlement Broker
AEC FINANCIAL, INC.

By: _____

*Aguilar v. United States*, 2:16-cv-00153 (D. Nev.)
Stipulation for Compromise Settlement and Release
(April 24, 2017)

Page 19 of 19

**Exhibit 2**

# IRREVOCABLE REVERSIONARY INTER VIVOS GRANTOR
# MEDICAL CARE TRUST FOR THE BENEFIT OF ISABELLA KENDY AGUILAR

## ARTICLE I
## ESTABLISHMENT OF THE TRUST

Pursuant to a *Stipulation For Compromise Settlement And Release* (hereinafter "Stipulation") of a Federal Tort Claims Act (28 U.S.C. § 2671, et seq.) matter, the United States of America (as the "Grantor") establishes this Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust ("the Trust"). The Stipulation is attached hereto and incorporated herein by reference.

## ARTICLE II
## THE BENEFICIARY OF THE TRUST

The Beneficiary of the Trust is `I . K . A .` For purposes of the Trust, the Beneficiary shall act through the Beneficiary's legal representative during any period of minority or legal incapacity. A legal representative is defined for purposes of the Trust as an individual or entity authorized by law or a Court order to act on behalf of the Beneficiary during a period of minority or legal incapacity for purposes of carrying out the terms and conditions of the Trust. For purposes of this Trust, a legal representative shall include the Beneficiary's attorney, parent, legal guardian, guardian, guardian ad litem, and conservator, but shall not include an individual or entity acting pursuant to a power of attorney, provided such attorney, parent, legal guardian, guardian, guardian ad litem, or conservator has the legal authority to act on behalf of the Beneficiary for purposes of carrying out the terms and conditions of the Trust. In the event more than one individual or entity has such authority, the Administrator and the Trustee are entitled to rely upon the signatures, statements, or actions of any one of the legal representatives in carrying out the terms of the Trust in the absence of a Court order to the contrary, provided that such Court order has first been presented to the Administrator, Trustee, and Grantor. Upon reaching the age of majority, as determined by the law of the state in which the Beneficiary resides, the Beneficiary shall comply with that state's guardianship and conservatorship laws.

The Grantor retains a reversionary interest in the Trust Estate, effective upon the termination of the Trust, as provided in Article XIX of the Trust.

## ARTICLE III
## THE PURPOSE OF THE TRUST

The purpose of the Trust is to pay allowable benefits, as defined in Article IX of the Trust, to or on behalf of the Beneficiary according to the terms and conditions of the Trust. Nothing in the Trust shall be construed to require the Beneficiary to use any particular medical

provider or group of medical providers, unless expressly provided to the contrary in Article IX of the Trust.

## ARTICLE IV
## APPOINTMENT OF TRUSTEE AND ADMINISTRATOR

The Grantor appoints PeoplesBank, A Codorus Valley Company, as the Trustee of the Trust, and Medical Fund Advisors, Inc., as the Administrator of the Trust. The Trustee and the Administrator agree to accept their respective appointments and to carry out their respective fiduciary duties and responsibilities as defined by the terms of the Trust. In the event the same entity is appointed to act as both the Trustee and the Administrator, that entity shall carry out the duties and responsibilities of both the Trustee and the Administrator.

## ARTICLE V
## THE TRUST ESTATE

For purposes of the Trust, the term "Trust Estate" is defined to be the amount the Grantor initially deposits with the Trustee pursuant to the Stipulation, together with any income from Trust Estate investments and any annuity payments, in the event the United States purchased an annuity contract to make periodic payments to the Trust.

The Trust and the Trust Estate shall be a secondary payer of allowable benefits based on the terms and conditions set forth herein.

No rights, obligations, duties, or allowable benefits are created or payable pursuant to the Trust unless and until all of the following conditions have been met: (1) each party to the Trust has signed the Trust instrument; (2) the Grantor has deposited with the Trustee the initial sum stated or determined by the terms of the Stipulation; (3) the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust; and (4) the Beneficiary is alive at the time said sum is deposited into said separate account. The Trust shall be deemed established when each and every one of these conditions has been met.

## ARTICLE VI
## THE DUTIES OF THE ADMINISTRATOR

Section A.    Duty to Act as the Administrator

The Administrator shall act as the Administrator and perform its fiduciary duties and responsibilities as defined by the terms of the Trust. The term "Administrator" includes the present Administrator and any successor of said Administrator, whether by appointment pursuant to the Trust, or by way of merger, consolidation, or transfer of business.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO 1   I.K.A        (04/24/2017)

**Section B.**     **Duty to Review Requests for Payment of Allowable Benefits**

   **1.**     **Administrator's Exclusive Duty**

   The Administrator shall have the exclusive duty and responsibility to receive and review requests for payment of allowable benefits, as defined in Article IX of the Trust.

   **2.**     **Submission of Requests for Payment of Allowable Benefits**

   All requests for payment of allowable benefits must be submitted to the Administrator. Requests must be submitted and received by the Administrator within ninety days of the date the goods or services for which payment is being requested were provided. Absent good cause being demonstrated by the Beneficiary, the Administrator shall reject and not authorize any request for payment of allowable benefits that is received by the Administrator more than ninety days after the goods or services for which payment is being requested were provided. In the event a request for payment of allowable benefits is submitted to the Trustee (and the Trustee is not also acting as the Administrator), the Trustee shall promptly transfer the request to the Administrator and shall take no further action with respect to the request for payment of allowable benefits unless and until the Trustee has received notification from the Administrator pursuant to Section E, below, to pay an amount from the Trust Estate to a particular payee.

   **3.**     **Required Documentation**

   a. Each request for payment of allowable benefits must be in writing on a form provided by the Administrator. The Beneficiary may submit a request for payment of allowable benefits, or the Beneficiary may authorize the provider of the goods or services to submit a request for payment of allowable benefits directly to the Administrator. The Beneficiary may arrange with the Administrator for the advance authorization of regularly recurring expenses. Except for requests for payment where advance authorization has already been obtained, each request for payment of allowable benefits must be signed by the Beneficiary if legally competent, by the Beneficiary's legal representative during a period of minority, or by an individual or entity authorized by a Court to act on behalf of the Beneficiary in the event said Court has determined after the Beneficiary has reached the age of majority that the Beneficiary lacks the legal capacity to act on his or her own behalf.

   b. Each request for payment of allowable benefits must include a written statement from the provider of the goods or services for which payment is being sought, detailing the nature of the goods or services and detailing the charges for such goods or services. The written statement, together with supporting documentation (such as medical records or product information) and billing information, must provide sufficiently detailed information for the Administrator to determine whether such goods or services are payable by the Trust and to determine the amount to be paid from the Trust Estate. The written statement must specifically indicate whether the

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO I  Ⅰ . K. A         (04/24/2017)

charges for the goods or services have been or will be submitted to any source of benefits other than the Trust, whether any portion of the charges has been or will be paid by any other source of benefits, the amount of any payment received, the balance due, and the identity (including name, address, and telephone number) of the other source of payments.

c. Unless already on file with the Administrator, each request for payment of allowable benefits shall include a written agreement by the Beneficiary to provide the Administrator (and the Trustee, if necessary) with: information; documentation; valid authorizations, including authorizations for the Administrator to submit any request for payment of allowable benefits to another source of benefits, as defined in Section D, below, after the Administrator has determined that the request for payment is otherwise payable by the Trust or to seek reimbursement or to apply for benefits from such other source of benefits; valid releases for medical or billing information; and signatures either required by the terms of the Trust or deemed necessary by the Administrator and the Trustee to carry out their respective duties and responsibilities under the terms of the Trust.

**Section C.  Duty to Determine Whether Payment of Request for Allowable Benefits is Authorized by the Trust**

**1.  Determination of Allowable Benefits**

Upon the receipt of the information, authorizations, releases, and signatures required in Section B, Paragraph 3, above, the Administrator shall commence its review of each request for payment of allowable benefits and the Administrator shall, subject to this Article VI and Article IX of the Trust, determine whether the goods or services for which payment is being sought are allowable benefits under the terms of the Trust. The Administrator has no duty to determine whether the Trust authorizes any payments other than those for allowable benefits: those determinations are to be made by the Trustee within its duties, responsibilities, and powers under Articles VII and X of the Trust.

**2.  Administrator's Determination Based Exclusively on the Terms of the Trust**

The Administrator's determination of whether a request for payment of allowable benefits is authorized by the Trust shall be based exclusively on the terms of the Trust. However, in determining the necessity for, or reasonableness of, any request for payment of allowable benefits, the Administrator may be guided by making reference to what would be deductible medical expenses under the Internal Revenue Code and such regulations and rulings which are then and there in effect. Notwithstanding any Internal Revenue Code, regulation, or ruling to the contrary, the Administrator shall not pay any allowable benefit unless it is otherwise allowed under the terms of the Trust, even though the expense may be considered a deductible medical expense for tax purposes.

3. **Exclusions That Apply to Requests for Payment of Allowable Benefits Unless There is an Express Authorization to the Contrary in Article IX**

   **Unless otherwise specifically authorized in Article IX of the Trust,** the Administrator shall not authorize, and the Trustee shall **not** pay, any of the following:

   a. Goods and services received from, provided by, or paid for by any institution or agency of the United States Government.

   b. Goods and services, or portions thereof, for which the Beneficiary is not liable for payment or has not been, or will not be, billed or charged; goods and services that were provided prior to the date the Trust is deemed established; goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established; and goods or services that were provided after the date the Trust is deemed terminated.

   c. Goods and services which were provided by the Beneficiary's immediate relative or household member, such as spouse (by marriage, common law, or partner), parent, grandparent, child, sibling, or guardian, whether by blood, marriage, adoption, or legal appointment.

   d. Goods and services paid by any person or entity, including Medicare or Medicaid, other than the Beneficiary to the extent that person or entity had a legal obligation to make such payment.

   e. Goods and services for which the Beneficiary has been reimbursed or reasonably expects to be reimbursed, regardless of the source of the payment.

   f. Investigational or experimental medical goods or services, unless such medical goods or services have been approved by the FDA for investigational or experimental purposes and provided further that such investigational or experimental medical goods or services are being provided to the Beneficiary in the United States. Goods or services related to dental care.

   g. Goods or services that the Administrator determines are not medically necessary. For purposes of the Trust, the term "medically necessary" means that the goods or services (i) were prescribed by an individual who is authorized by law to write a prescription; (ii) are consistent with the standards of good medical practice in the United States; (iii) are primarily and customarily used only for a medical purpose; (iv) are generally useful only to a person with an illness, disability, disease, or injury such as the Beneficiary's at the time treatment is being provided; (v) are not primarily for the personal comfort (except that medications or surgeries to treat or relieve physical pain shall not be considered to be for "personal comfort" for the purpose of this definition) or convenience of the Beneficiary, the family of the Beneficiary, or the provider of the goods or services; and (vi) serve a specific therapeutic purpose in the treatment of any of the Beneficiary's illnesses, disabilities, diseases, or injuries.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO I ꓮ .ㅈ. ᲛᲐ .   · (04/24/2017)

h. Fees that are in excess of reasonable and customary charges, as determined by the Administrator. For purposes of the Trust, the term "reasonable and customary charge" means the prevailing charge made by other providers of such goods or services within the geographic area in which the goods or services are being provided.

i. Treatment for cosmetic purposes.

j. In-home attendant care, in-home attendant care services, or in-home services (hereinafter "in-home attendant care"). For purposes of the Trust, the terms " in-home attendant care," "in-home attendant care services," and "in-home services" shall be defined as any type of care or services provided to the Beneficiary in the Beneficiary's principal place of residence, including but not limited to medical treatment and medical care, non-medical treatment and care, psychological or psychiatric treatment and care, skilled nursing care (i.e., care that requires a registered nurse or a licensed practical nurse), unskilled nursing care, therapy, counseling, companion services, cleaning services, personal attendant services, personal assistant services, attendant care, custodial care and services, respite care, and all other types of care, services, assistance, attendant care, and support that may be provided to, or is needed by, the Beneficiary in the Beneficiary's principal place of residence. For purposes of the Trust, term "principal place of residence" means a single family home that is owned, rented, or leased by the Beneficiary, a natural parent of the Beneficiary, or a legal guardian of the Beneficiary.

k. Non-medical social services; educational and training services; training in activities of daily living; any equipment related to these types of services or training.

l. Habilitative, rehabilitative, physical, speech, occupational, and recreational therapy; any equipment related to such therapies; a membership to a pool, spa, health club, fitness center, gymnasium, or similar type facility.

m. Counseling of any type.

n. Security systems.

o. Entertainment or other activities of daily living; and any equipment related thereto.

p. Transportation or travel expenses of any type for any purpose.

q. Motor vehicle expenses. For purposes of the Trust, the term "vehicle expenses" shall be defined to include, but not limited to, expenses relating to the purchase, rental, or lease of a motor vehicle of any type; expenses relating to the maintenance, repair, or modification of a motor vehicle of any type; expenses relating to the installation, maintenance, repair, or

modification of accessories or additional equipment for a motor vehicle of any type; and taxes or insurance on a motor vehicle of any type.

r. Real estate expenses. For purposes of the Trust, the term "real estate expense" shall be defined to include, but not limited to, expenses relating to the purchase, rental, lease, construction, re-building, restoration, repair, or modification of a building of any type (including a home or residence) or to any other type of structure; expenses relating to the construction of any type building or structure on land or real estate; expenses relating to mechanical, electrical, and plumbing systems, including auxiliary or backup systems; expenses relating to the maintenance, repair, modification, or upgrade or improvement of a building or structure of any type; expenses relating to the maintenance of or modification to land; expenses relating to access, ingress, or egress to a building or structure of any type; expenses relating to access, ingress, or egress within a building or structure of any type; expenses relating to the installation, maintenance, repair, or modification of fixtures or accessories on or in any building or structure of any type; expenses relating to the installation, maintenance, or modification of fixtures or accessories on land or real estate; taxes on a building or structure of any type; and insurance covering any land, building, or structure.

s. The purchase, rental, lease, maintenance, or modification of any personal property of any type; or any insurance covering any personal property of any type.

t. Burial and funeral expenses.

u. Fees, costs, and expenses relating in any way to a guardianship or conservatorship, including, but not limited to fees, costs, and expenses (including bond premiums) relating to the establishment, administration, or termination of a guardianship or conservatorship or relating to any proceeding to determine whether the Beneficiary lacks legal capacity.

v. Goods and services that are neither caused by, nor related directly to, injuries alleged by the Beneficiary in Aguilar v. United States, No. 2:16-cv-00153 (D. Nev.).

4.     **Deadline for Making Determination**

The Administrator shall complete its review and make its determination within thirty days of receipt of a request that fully and completely complies with the requirements of Article VI, Section B, of the Trust. If the review and determination cannot be made within the thirty-day period, the Administrator shall have an additional thirty days to complete said review and to make said determination, provided written notice of such extension is provided to the Beneficiary.

## 5. Reliance on Information Submitted

In making determinations pursuant to this Section C, the Administrator shall have the right to rely upon the information submitted by the Beneficiary or providers of goods and services. The Administrator shall have no duty or obligation to determine the qualifications of the providers of goods and services or whether any payments made to the Beneficiary are actually used by or for the Beneficiary's benefit. The Administrator is not required to obtain an order or approval from any Court or the approval of the Grantor, except as required by the Trust, in determining whether a request for payment of allowable benefits is authorized, in whole or in part, under the terms of the Trust. The Administrator shall not be liable in money damages for any discretionary payment or other loss that occurs, other than through its own fault or negligence.

## 6. Denial of Requests for Payment of Allowable Benefits

If a request for payment of allowable benefits is denied, in whole or in part, the Administrator shall provide written notice of the decision to the Beneficiary. The notice shall state the reasons for the denial and shall be sent to the Beneficiary within a reasonable period of time, not to exceed fifteen days after the decision is made. The Beneficiary shall have ninety days from the date the Beneficiary receives the written notice of the denial to object to the denial. The Beneficiary waives any objection the Beneficiary has or might otherwise have with respect to the denial by failing to object within the ninety-day period provided above. Objections shall not be unreasonably made.

## 7. Disputes

If a dispute arises with respect to a request for payment of allowable benefits, the Administrator may refrain from taking any other or further action in connection with the disputed request for allowable benefits until the matter has been resolved.

## Section D. Duty to Submit Requests for Payment to Other Sources of Benefits

### 1. Submission of Requests for Payment to Other Sources of Benefits

For each request for payment of allowable benefits determined by the Administrator to be payable from the Trust Estate, the Administrator shall submit the request for payment to any other source of benefits from which the Beneficiary is entitled to benefits or payment before notifying the Trustee under Section E, below, to make a payment from the Trust Estate. When submitting the request to other sources of benefits, the Administrator shall notify the other source that the Trust Estate, as provided in Article V of the Trust, was established by the Grantor as a secondary payer on any request for payment of allowable benefits.

2.      Definition of Other Sources of Benefits

For purposes of the Trust, the terms "other source of benefits," "another source of benefits," and "other sources of benefits," are defined to mean any source of benefits or payments other than the Trust Estate, but shall not include any assets owned by the Beneficiary. Examples of "other source of benefits," "another source of benefits," or "other sources of benefits," shall include, but not be limited to, group or individual health insurance; automobile insurance; federal, state, local, or tribal program or insurance; Workers' Compensation; and liability insurance.

3.      Procedures in the Event the Other Sources of Benefits Refuse to Pay

In the event another source of benefits to whom a request for payment of allowable benefits has been submitted refuses to pay the request, in whole or in part, the Administrator shall notify the Trustee pursuant to Section E, below, to make a payment from the Trust Estate for the allowable benefit to the extent otherwise authorized by the terms of the Trust. Thereafter, the Administrator shall seek reconsideration of the refusal to pay by the other source of benefits. In the event the other source of benefits reconsiders its refusal and agrees to pay the benefit, the payment from the other source of benefits shall be made payable to the Trust Estate and deposited by the Trustee into the Trust Estate.

**Section E.      Duty to Notify Trustee to Pay Allowable Benefits From Trust Estate**

After the Administrator has determined that a request for payment of allowable benefits is authorized by the terms of the Trust, and to the extent the request has not otherwise been paid by another source of benefits after being submitted pursuant to Section D, above, the Administrator shall notify the Trustee in writing of the amount to be paid from the Trust Estate and the name of the person or entity to whom such payment is to be made.

**Section F.      Duty to Require Disclosure of Other Sources of Benefits and to Require Application or Enrollment with Other Sources of Benefits for Coverage**

1.      Disclosure of Other Sources of Benefits

Within sixty days of the date the Trust is deemed established, and annually thereafter, the Administrator shall require the Beneficiary to disclose to the Administrator the identity of any source of benefits from which the Beneficiary is or may be entitled to payment or benefits for which the Trust is otherwise required to make payment. The term "other source of benefits" is defined in Section D, Paragraph 2, above. The Beneficiary must make a legitimate and reasonable effort to locate and identify all such sources of benefits.

2.    Application or Enrollment with Other Sources of Benefits

Whenever another source of payment or benefits has been identified to the Administrator, the Administrator shall determine whether payment of allowable benefits is available from such other source. The Trustee shall notify the Administrator if it learns of any other such source of benefits. In the event the Administrator determines that payment of allowable benefits may be available from another source of payment or benefits, the Administrator shall require the Beneficiary to submit an application to the other source of benefits for coverage by that other source. Pursuant to Article X of the Trust, the Trustee is authorized to pay the costs (such as enrollment fees or premiums) of coverage by the other source, provided the Trustee and Administrator have determined that enrollment with such other source and the payment of the cost of coverage from the other source is in the best interests of the Trust Estate and the Grantor concurs. The Trustee shall not pay the cost of any new or current coverage except for that portion of the cost attributable to having the Beneficiary covered.

3.    Failure to Disclose or Apply for Benefits from Other Sources

In the event the Beneficiary refuses or fails to disclose the information required in Paragraph 1, above, or refuses or fails to apply for benefits from another source of payments or benefits as required in Paragraph 2, above, the Administrator shall determine the extent to which the other source of benefits would have otherwise paid for benefits that are otherwise allowed by the Trust. To the extent it appears to the Administrator, in its discretion, that the other source of benefits, upon receiving a valid application for benefits, may have paid, in whole or in part, a request for payment of allowable benefits that would otherwise be allowed by the Trust, the Administrator shall not authorize the payment of the request for payment of allowable benefits from the Trust Estate to the extent the other source would have paid had a valid application been submitted. The Trustee is authorized to take any reasonable legal action to enforce the requirements in the Trust that the Beneficiary provide to the Trustee and Administrator any information, documentation, authorizations, access, or signatures required by the terms of the Trust or as requested by the Trustee or Administrator in administering the terms of the Trust.

Section G.    Duty to Assist the Beneficiary

The Administrator shall provide the Beneficiary with assistance in applying for payment of allowable benefits from the Trust Estate. The Administrator may, in its discretion, provide clerical and technical assistance to the Beneficiary in determining the availability of benefits from any source of benefits and in completing an application to any source of benefits.

**Section H.     Duty to Maintain Files**

The Administrator shall obtain and retain in its files a copy of all requests for payment of allowable benefits and supporting documentation, including receipts and itemizations. The Administrator shall permit the Trustee, the Grantor, and the Beneficiary or their designated representatives to examine all such files and documentation.

## ARTICLE VII
## THE DUTIES OF THE TRUSTEE

**Section A.     Duty to Act as the Trustee**

The Trustee shall act as the Trustee and perform its fiduciary duties and responsibilities as defined by the terms of the Trust. The term "Trustee" includes the present Trustee and any successor of said Trustee, whether by appointment pursuant to the Trust, or by way of merger, consolidation, transfer of Trust business, or otherwise.

**Section B.     Duty to Open Separate Account and to Manage the Trust Estate**

The Trustee shall open a separate account in the name of the Trust and deposit into such account the sum received from the Grantor pursuant to the Stipulation. The Trustee agrees to accept, hold, manage, invest, administer, and distribute the Trust Estate according to the terms of the Trust within the powers provided to the Trustee.

**Section C.     Duty to Make Payments**

**1.     Payment of Allowable Benefits**

Upon receipt of written notification from the Administrator pursuant to Article VI, Section B, of the Trust that an allowable benefit is to be paid from the Trust Estate, the Trustee shall make the payment authorized by the Administrator in the amount and to the payee authorized by the Administrator. The Trustee shall not pay any request for payment of allowable benefits without the express written authorization of the Administrator. In making a payment, the Trustee shall have the right to rely upon the determinations of the Administrator that a payment is authorized by the terms of the Trust and that the amount to be paid from the Trust Estate and the payee are correct. The Trustee shall incur no liability for disbursements made in reliance on such determinations by the Administrator. The Trustee shall have no duty or obligation to determine the qualifications of the providers of goods and services or whether any payments made to the Beneficiary are actually used by or for the Beneficiary's benefit.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO  I . K .A.     (04/24/2017)

## 2. Payment of Other Trust Expenses

In addition to making payments pursuant to Paragraph 1, above, for allowable benefits authorized by the Administrator, the Trustee shall also pay the other expenses of the Trust and Trust administration to the extent allowed by the terms of the Trust.

## 3. Source of Payments Made From the Trust Estate

Payments authorized by the Trust shall be paid first out of the income generated by the Trust Estate. At the end of each calendar year, any such income that has not been disbursed, expended, reserved, or otherwise accumulated, shall be accumulated and added to the Trust Estate as principal. In the event the income of the Trust Estate is insufficient in any single calendar year to make the payments authorized by the Trust, the Trustee, in its discretion, may invade the principal of the Trust Estate. However, the Trustee may not invade the principal of the Trust Estate by an amount to exceed Twenty Thousand Dollars ($20,000.00) in any single calendar year without giving prior written notice to the Beneficiary and Grantor. The purpose of the notification requirement is to advise the Beneficiary and Grantor and to permit either of them to question payment requests that may jeopardize the long-term viability of the Trust Estate. The mere fact that such notice is given, however, shall not affect the obligation of the Trustee to make payments that are otherwise authorized by the Trust. For the purpose of this Paragraph 3, any annuity payments into the Trust Estate during any calendar year shall be considered income in determining the amount available for expenditure before the Trustee is considered to have invaded the principal of the Trust Estate, but shall not be considered in determining the fees of the Trustee or Administrator unless otherwise allowed under the Trustee's and Administrator's standard schedule of fees. In the event the income and principal of the Trust Estate are insufficient in any single calendar year to make the payments authorized by the Trust, the Trustee shall make payments only to the extent funds are available in the Trust Estate. The Trustee shall not borrow from any source to make payments when the income and principal of the Trust Estate are insufficient in any single calendar year to make the payments authorized by the Trust. In the event the Trust Estate becomes Zero Dollars ($0.00) and there is no income or annuity payments due in the future, the Trust shall be deemed terminated and the Trustee shall close the Trust according to the procedures set forth in Article XIX.

## 4. Discretion of Trustee in Making Payments

The Trustee is not required to obtain an order or approval from any Court or the approval of the Grantor, except as required by the Trust, in making payments from the Trust Estate. The Trustee shall not be liable in money damages for any payment or other loss that occurs other than through its own fault or negligence. Until the Trustee has received, at the location where the Trust Estate is being administered, written notice of the Beneficiary's death or of any other event upon which the right of payments may depend, the Trustee shall incur no liability for making payments authorized by the Trust.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO  Ĩ· ĸ· ₳,     (04/24/2017)

## Section D.   Duty to Recover Payments

If subsequent to a payment of an allowable benefit, the Trustee determines that the payment should not have been made or should have been made in a lesser amount or that the Beneficiary has been reimbursed from another source of benefits for such benefit, the Trustee shall offset the amount of such payment to the extent of the overpayment. The Trustee is also authorized to take reasonable legal action as may be necessary to reimburse the Trust Estate for an overpayment or to collect payments from other sources of payment. For purposes of the Trust, the term "overpayment" shall mean any of the following: any payment that should not have been made; any payment that should have been made in a lesser amount; any payment of an expense for which there has been payment or reimbursement from another source of benefits; and any payment of an expense that should have been paid from another source of benefits.

## Section E.   Duty to Maintain Files and Accounts and to Render Statements of Account

The Trustee shall obtain and retain in its files a copy of the receipts and itemizations for all expenses paid by the Trust Estate. The Trustee shall also maintain a system of accounting and books of account with respect to the income, expenses, and assets of the Trust Estate which conform to the generally accepted principles and practices of accounting. The Trustee shall permit the Grantor, the Administrator, and the Beneficiary or their designated representatives to examine all accounts, files, and documents relating to the Trust and the Trust Estate.

The Trustee shall render a statement of the administration of the Trust Estate to the Administrator, the Grantor, and the Beneficiary. The statement shall be made at least quarterly. Copies of all tax filings, if any, filed on behalf of the Trust Estate shall similarly be furnished. The Grantor and the Beneficiary shall each have ninety days from the date of receipt of each statement to object thereto. If the Grantor timely objects to any payment from the Trust Estate, or to the reasonableness thereof, or the necessity therefore, no such payment or similar payment shall be authorized or made in the future, except on written notice to the Grantor. The failure of the Grantor or the Beneficiary to object to an item on a statement or to a particular payment noted in the statement shall be conclusive as to such item or payment but shall not preclude the Grantor or the Beneficiary from objecting to like items or payments appearing in future statements. Objections shall not be unreasonably made.

The Trustee is authorized to provide a copy of the statement of the administration of the Trust Estate to any Court of competent jurisdiction which may require the same, upon the consent of the Beneficiary.

## ARTICLE VIII
## THE DUTIES AND RESPONSIBILITIES OF THE BENEFICIARY

The Beneficiary has the following duties and responsibilities: (1) to cooperate with the Administrator and Trustee to the extent the Administrator or the Trustee determine that said cooperation is necessary or useful for the Administrator or the Trustee to carry out its duties and responsibilities; (2) to submit requests for payment of allowable benefits as required by the Trust; (3) to provide signatures, authorizations, documentation, or information necessary for the carrying out of the terms of the Trust; (4) to identify other sources of payments or benefits; (5) to apply to other sources of payments or benefits for coverage; (6) to assist the Administrator and Trustee in obtaining payments or reimbursement from other sources of payments or benefits; and (7) to transmit to the Trust Estate any amount received by the Beneficiary from another source of payments or benefits in reimbursement for, or payment of, an expense that has been paid or will be paid from the Trust Estate.

## ARTICLE IX
## ALLOWABLE BENEFITS

### Section A.    Definition of Allowable Benefits

For purposes of the Trust, the term "allowable benefits" is defined to mean only those benefits specifically enumerated below in Section B. The term "allowable benefits" is further defined to mean only those specifically enumerated benefits in Section B, below, that (i) are incurred after the date the Trust is deemed established, as defined in Article V of the Trust; (ii) are incurred before the date the Trust is deemed terminated, as defined in Article XIX of the Trust; (iii) are necessary and reasonable; (iv) are caused by, or related directly to, the injuries the Beneficiary contended in Aguilar v. United States, No. 2:16-cv-00153 (D. Nev.); and (v) are exclusively for the benefit of the Beneficiary, unless otherwise specifically authorized by the terms of the Trust.

### Section B.    Enumeration of Allowable Benefits

Subject to Article IX, Section A, above, the Administrator shall authorize and the Trustee shall pay the following enumerated allowable benefits, based upon, and subject to, the terms and conditions set forth in the Trust and in the enumerated allowable benefits below:

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO  I . K . A.          (04/24/2017)

1. **Medical Treatment and Medical Care Outside of the Beneficiary's Principal Place of Residence**

a. The Administrator shall authorize and the Trustee shall pay for medical treatment and medical care provided to the Beneficiary at locations outside of the Beneficiary's principal place of residence, as defined above in Article VI, Section C, Paragraph 3.j., for the diagnosis, cure, mitigation, or prevention of disease, illness, injury, or disability.

b. The Administrator shall authorize and the Trustee shall pay for the services of physicians, physician's assistants, registered nurses, licensed practical nurses, licensed or certified nurse's aides, radiologists, laboratory technicians, and other similarly licensed or certified health care personnel providing medical treatment and medical care outside of the Beneficiary's principal place of residence.

c. Except to the extent specifically authorized below in Paragraphs 2 and 4, the Administrator shall not authorize and the Trustee shall not pay for any in-home attendant care, as defined in Article VI, Section C, Paragraph 3.j., or for any respite care.

2. **In-Home Attendant Care**

a. Subject to the terms and conditions of this Paragraph, the Administrator shall authorize and the Trustee shall pay for in-home attendant care services.

b. In-home attendant care services.

(1) The Administrator shall authorize and the Trustee shall pay up to a maximum of eight (8) hours per day of in-home attendant care services on weekdays and twelve (12) hours of in-home attendant care services on weekends.

(2) The Beneficiary must be physically present in the Beneficiary's principal place of residence at such time as the in-home attendant care services are provided. Payment is not authorized under this Paragraph 2.b if the Beneficiary is not physically present in said principal place of residence at the time such in-home attendant care services are provided. For any period of time that the Beneficiary is not physically present in the Beneficiary's principal place of residence, including a period of time when the Beneficiary is a patient at a hospital, or is a resident at, or is admitted to, a hospital, nursing home, foster home, foster care facility, residential care facility, licensed group home, long-term care facility, or hospice facility, the Administrator shall not authorize and the Trustee shall not pay for any in-home attendant care under this Paragraph 2.

(3) The Administrator shall authorize and the Trustee shall pay for in-home attendant care under this Paragraph 2 at the skill level of in-home attendant care services that is medically

necessary (as defined in Article VI, Section C, Paragraph 3.g., above) and at the reasonable and customary charge (as defined in Article VI, Section C, Paragraph 3.h. above) for that skill level for providing such in-home attendant care services, except that in the event that the individual providing in-home attendant care services authorized by this Paragraph 2 is the Beneficiary's spouse, significant other, companion, relative or family member (by blood, adoption, or marriage, including parent, grandparent, sibling, child, aunt, or uncle), guardian, custodian, conservator, or household member (including but not limited to a significant other, companion, roommate, housemate, or tenant) of the Beneficiary, the Administrator shall authorize and the Trustee shall pay such individual an hourly rate of pay equal to the median hourly rate of pay of a home health aide based on the most recent online wage data available from the United States Department of Labor's Bureau of Labor Statistics for the metropolitan or nonmetropolitan geographic area in which the Beneficiary is physically residing. See, http://www.bls.gov/oes/current/oessrcst.htm.

c. Except to the extent expressly authorized in this Paragraph 2 and in Paragraph 4 below, the Administrator shall not authorize and the Trustee shall not pay for in-home attendant care services regardless of the Beneficiary's medical needs, the type of services being provided, or the person or skill level of the person providing such services.

3.    **Emergency Room, Hospital, and Residential Care Facility**

The Administrator shall authorize and the Trustee shall pay for the cost of the Beneficiary's admission to a hospital for acute medical treatment and care and to an emergency room for emergency medical treatment and care. The Administrator shall authorize and the Trustee shall pay for the cost of admission to a nursing home or other type of licensed residential care facility (including a licensed group home or long-term care facility but not to include a licensed foster home). The cost of admission to any facility authorized in this Paragraph 3 shall include room and board and medical expenses. Except to the extent expressly authorized in this Paragraph 3, the Administrator shall not authorize and the Trustee shall not pay for the cost of admission to or residence at any other type of facility other than stated in this Paragraph 3.

4.    **Therapy**

a. The Administrator shall authorize and the Trustee shall pay for physical, occupational, and speech therapy services necessitated by the Beneficiary's medical condition, provided that (1) the Beneficiary's treating physician orders any such therapy services, (2) the Beneficiary's treating physician certifies in writing that the Beneficiary is capable of benefiting from such therapy service, and (3) such therapy service is administered by a licensed health care provider, licensed therapist, or a therapist trained in generally accepted therapy modalities and performed under the supervision of a licensed therapist. In the event the Beneficiary is receiving therapy at no cost under any program provided, sponsored, or paid for by the United States, any State of the United States, or any Territory of the United States or District of Columbia, or is receiving

therapy provided, sponsored, or paid for by a private program or insurance, the Administrator shall authorize and the Trustee shall pay only the amount necessary to supplement the therapy services the Beneficiary is receiving under such statutes, programs, or insurance.

b. The Administrator shall authorize and the Trustee shall pay for therapy services authorized by this Paragraph 4 even if such services are provided at the Beneficiary's principal place of residence, as defined in Article VI, Section C, Paragraph 3.j., provided that the cost of such services does not exceed the cost of providing such services outside of the Beneficiary's principal place of residence.

5. **Prescription Drugs and Medicines; Medical Devices; Medical Appliances; Durable Medical Equipment; Medical Supplies; and Medical Diagnostic Testing**

The Administrator shall authorize and the Trustee shall pay for prescription drugs and medicines, including under pads, diapers, non-sterile and sterile gloves, tubing, catheters, leg bags, and waterproof sheets; durable medical equipment, including hospital-type adjustable bed, bed lift, manual wheelchair, and motorized wheelchair (and replacement batteries); medical devices; medical appliances. The Administrator shall authorize and the Trustee shall pay for the cost of maintenance on any medical device, medical appliance, or durable medical equipment that was purchased from Trust Estate funds.

Notwithstanding any definition of medical devices, medical appliances, durable medical equipment, or medical therapeutic equipment and supplies to the contrary, the following items shall not be paid under this Paragraph 5:

a. Motor vehicle expenses, as defined above in Article VI, Section C, Paragraph 3.q.

b. Real estate expenses, as defined above in Article VI, Section C, Paragraph 3.r.

c. Swimming pools, lap pools, spas, whirlpools, or saunas.

d. The construction, rent, or lease of any facility or structure for any type of therapy or for any other purpose.

e. Membership to a pool, spa, health club, fitness center, gymnasium, or similar type facility.

f. Computers, computer hardware, computer software, and computer peripherals, except to the extent the computer or computer hardware has been or will be implanted in the Beneficiary, is a component in such implant or in the Beneficiary, or is a component of a medical

appliance or device to maximize the Beneficiary's hearing capabilities and promote hearing acuity.

The Administrator may make arrangements with a firm such as PMSI (Pharmacy Management Services, Inc., P.O. Box 20248, Tampa, Florida 33622-0248; 1-800-237-7676) or another similar service for advance deposit for drugs and services as may be to the benefit and convenience of the Beneficiary if prescription services are not available through governmental programs or private insurance.

6.    **Transportation for Obtaining Emergency Medical Care**

The Administrator shall authorize and the Trustee shall pay for reasonably incurred transportation expenses of the Beneficiary (including ambulance hire) primarily for and essential to obtaining emergency medical care, emergency medical treatment, or emergency medical services. The Administrator shall not authorize and the Trustee shall not pay any other transportation or motor vehicle expenses except those expressly authorized in this Paragraph 7 and in Paragraph 7 below.

7.    **Motor Vehicle Expense Allowance**

The Administrator shall not authorize and the Trustee shall not pay any motor vehicle expenses, as defined in Article VI, Section C, Paragraph 3.q.

However, to help defray expenses related to the operation of a motor vehicle used to transport the Beneficiary, including the purchase, lease, rent, maintenance, modification, operation, taxes and insurance, the Administrator shall authorize and the Trustee shall pay to the Beneficiary the following vehicle allowances on the terms and conditions stated below:

a.    Not sooner than sixty (60) days from the date this Trust is deemed established, the maximum sum of Twenty Thousand Dollars ($20,000.00) (hereinafter "Initial Allowance"); and

b.    Every seven (7) years after the date of the payment of the Initial Allowance, a maximum sum of Twenty Thousand Dollars ($20,000.00) (hereinafter "Subsequent Allowance"), provided, however, that the payment of any Subsequent Allowance after the payment of the Initial Allowance shall be conditioned upon the Beneficiary residing and actually living on a full-time basis in her home or the home of a parent at least 330 days of the 365 days immediately prior to the date the Beneficiary requests a Subsequent Allowance.

8.    **Real Estate Expense Allowance**

The Administrator shall not authorize and the Trustee shall not pay for any expenses relating to real estate, as defined above in Article VI, Section C, Paragraph 3.r.

However, to help defray expenses related to the real estate, as defined above in Article VI, Section C, Paragraph 3.r, the Administrator shall authorize and the Trustee shall pay to the Beneficiary the following real estate expense allowance on the terms and conditions stated below:

      a.    Not sooner than sixty (60) days from the date this Trust is deemed established, the maximum sum of Twenty Thousand Dollars ($20,000.00) (hereinafter "Initial Allowance"); and

      b.    Not sooner than seven (7) years from the date this Trust is deemed established, an additional sum of Thirty Thousand Dollars ($30,000.00) (hereinafter "Subsequent Allowance") (resulting in a total lifetime maximum allowance in the sum of Fifty Thousand Dollars ($50,0000)) provided, however, that the payment of any Subsequent Allowance after the payment of the Initial Allowance shall be conditioned upon the Beneficiary residing and actually living on a full-time basis in her home or the home of a parent at least 330 days of the 365 days immediately prior to the date the Beneficiary requests a Subsequent Allowance.

9.      **Health Insurance**

The Administrator shall authorize and the Trustee shall pay the costs (such as enrollment fees or premiums) of health insurance coverage for the Beneficiary, provided the Trustee and Administrator have determined that such costs of coverage are in the best interests of the Trust Estate and the Grantor concurs. In the event the Trustee and Administrator determine under this Paragraph 9, and under Article VI, Section F, Paragraph 2 and Article X, Paragraph 3, that some or all of the cost of health insurance coverage should be paid by the Trust Estate, the fact that the health insurance policy under consideration also covers medical claims that this Trust would not otherwise pay under the terms of Article IX should not be used to reject a request by the Beneficiary for the payment of the cost of enrollment fees or premiums.

10.     **Miscellaneous Expense Allowance**

The Administrator shall not authorize and the Trustee shall not pay miscellaneous expenses of the Beneficiary. For purposes of the Trust, the term "miscellaneous expenses" shall mean any expense of the Beneficiary that is not otherwise specifically authorized by the terms and conditions of the Trust.

## ARTICLE X
## THE POWERS OF THE TRUSTEE

The Trustee shall have the following enumerated powers and all those powers provided by the laws of the Trustee's domicile, provided such powers are not inconsistent with the powers enumerated herein or the terms of the Trust. The Trustee shall exercise these powers in its sole discretion and without license or leave of any Court.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO   I. K. A.     (04/24/2017)

1. To pay allowable benefits from the Trust Estate to the extent authorized by the terms and conditions of the Trust.

2. To employ at its option and with prior consent of the Beneficiary any person or business for the purpose of providing allowable services to or for the Beneficiary, provided the Trustee determines that employment by the Trust directly is more economical than paying a third party to arrange for the provision of such services and that it will not detract from the quality of services provided to the Beneficiary.

3. To pay the cost of enrollment or premiums for benefits from a source of benefits other than the Trust, including health insurance, according to the terms and conditions of the Trust.

4. To pay or reserve sufficient funds to pay all expenses related to the management and administration of the Trust, including all assessments, charges, fees, taxes, or other expenses incurred in the administration, enforcement, or protection of the Trust and the Trust Estate not otherwise precluded by state law or any other provision of the Trust. Such expenses shall include the fees of the Trustee and the Administrator to the extent authorized in Article XIII of the Trust. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses relating to the establishment, administration, or termination of a guardianship or conservatorship for the Beneficiary or relating to any proceeding to determine whether the Beneficiary lacks legal capacity. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses incurred by either the Beneficiary or Grantor in resolving any disputes, questions, or interpretations arising under the Trust. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses incurred by the Beneficiary in seeking or obtaining benefits from any source of benefits other than the Trust, except that the Trustee shall pay the cost of enrollment or premiums for benefits from a source of benefits other than the Trust, including health insurance, according to the terms of the Trust. In the event the Trustee must retain legal counsel to represent the interests of the Trustee, the Administrator, or the Trust Estate in resolving any dispute, question, or interpretation arising under the Trust or to represent the Trustee, the Administrator, or the Trust Estate in the administration or protection of the Trust and the Trust Estate or for the purpose of enforcing the terms of the Trust, the Trustee is prohibited from retaining any attorney or law firm who represents or has represented the Beneficiary or any relative of the Beneficiary or any guardian or conservator of the Beneficiary unless the Trustee can demonstrate to the Grantor by clear and convincing evidence that there is no actual conflict of interest, no apparent conflict of interest, and no appearance of a conflict of interest between said attorney or law firm and the interests of the Grantor. The Trustee must take into account that the establishment of this Trust was part of a settlement of a Federal Tort Claims Act suit filed by the Beneficiary against the United States of America as a defendant and that the United States of America is the Grantor of this Trust.

5. To retain any property held in the Trust Estate for as long as the Trustee shall deem it advisable, provided the Trustee takes into account the purpose of the Trust.

6. To invest and reinvest in, and to acquire by purchase, exchange, or otherwise, intangible property such as stocks, bonds, securities, mutual funds, certificates of deposits, bank savings or checking accounts, foreign or domestic, or interests of participation therein (including common Trust Estate funds and mutual funds associated with the Trustee), without regard to the proportion any such property may bear to the entire amount held without any obligation to diversify, to the extent consistent with the purpose of the Trust and prudent investment rules. In the event the Trust Estate is less than One Hundred Thousand Dollars ($100,000.00) for three consecutive years and there is no reasonable basis to expect that the Trust Estate shall subsequently exceed One Hundred Thousand Dollars ($100,000.00), the Trustee may limit Trust investments to certificates of deposit and bank savings and checking accounts in an FDIC insured financial institution. The Trustee may not receive compensation from internal funds. The Trustee may also use the services of affiliated brokerage services as it deems appropriate in its sole discretion in connection with the purchase or sale of account assets. Any such transactions will be deemed appropriate, even where the Trustee has an underwriter's interest or charges fees or commissions which include a profit, so long as all such transactions are on terms and under circumstances comparable to those generally available through non-affiliated brokers. The Trustee shall attempt to invest all principal sums in excess of One Thousand Dollars ($1,000.00).

7. To sell (at public or private sale, without application to any Court) any property in the Trust Estate in such manner and on such terms and conditions as it may deem best to the extent consistent with the purpose of the Trust and prudent investment rules.

8. To vote personally or by proxy any shares of stock or other voting securities at any time held hereunder, and to consent to and participate in any reorganization, consolidation, merger, liquidation, or other change in any corporation whose stocks or securities may at the time be held hereunder

9. To commingle the assets of the Trust Estate with the assets of other trusts not owned by or property of the Beneficiary in order to maximize the investment income of the Trust Estate.

10. Except to the extent prohibited by law, to cause any securities to be registered in the names of its nominees, or to hold any securities in such condition that they will pass by delivery, including the use of custodians and other depositories.

11. To liquidate, compromise, adjust, and settle any and all claims and demands, including taxes, in favor of or against the Trust Estate, for such amounts, upon such terms, in such manner, and at such time as the Trustee shall reasonably deem advisable upon the consent of the Grantor.

12. To allocate to principal all stock dividends and cash in lieu of fractional shares paid as a result of a stock dividend received on stock.

13. To continue to make distributions of income and/or to accumulate the same hereunder until the Trustee shall have received written notice of any event which would affect such distribution and/or such accumulation of income; and the Trustee shall not be liable to any person having any interest in such continuation until the Trustee shall have received such written notice.

14. Except as otherwise specifically provided herein, the determination of all matters with respect to ascertaining what is principal and income of the Trust Estate and the apportionment or allocation of receipts and expenses between these accounts shall be governed, at the election of the Trustee, by the provisions of either the Uniform Principal and Income Act from time to time existing or the Principal and Income Act of the state in which the Trustee resides. Any such matter not provided for herein, or not provided for in the Principal and Income Act elected by the Trustee, shall be determined by the Trustee in the Trustee's sole discretion.

15. To invoke the jurisdiction of a Court of competent jurisdiction, by petition or other procedure, in order to protect the interests of the Trust Estate, to comply with or to enforce the terms of the Trust, or to resolve any dispute or question arising under the Trust in the event the parties to the dispute or question have attempted to resolve the matter informally as required by the Trust and failed. The Trustee is also authorized to take such reasonable legal action as may be necessary to reimburse the Trust Estate for an overpayment or to collect payments from other sources of payment.

## ARTICLE XI
## RESIGNATION OR REMOVAL OF THE TRUSTEE OR ADMINISTRATOR

### Section A. Right of Resignation

The Trustee shall have the right to resign at any time upon giving ninety days written notice of such resignation to the Grantor, the Beneficiary, and the Administrator. The Administrator shall have the right to resign at any time upon giving ninety days written notice of such resignation to the Grantor, the Beneficiary, and the Trustee. An entity that is acting as both the Trustee and the Administrator shall have the right to resign from either or both appointments upon giving ninety days written notice of such resignation to the Grantor and the Beneficiary.

### Section B. Removal of the Trustee or the Administrator

The Grantor shall have the right to remove a Trustee or an Administrator upon sixty days written notice to the Trustee, the Administrator, and the Beneficiary.

## Section C. Return of Unearned Fees

In the event the Trustee or an Administrator resigns or is removed from office, the resigning or removed Trustee or Administrator, prior to leaving the service of the Trust, shall return that portion of payments made to it during the Trust accounting period which represents unearned income. For purposes of the preceding sentence, "unearned income" shall mean the pro rata portion of all payments made to the resigning or removed Trustee or Administrator for which services have not been rendered. In the case of annual payments, this amount shall be determined by multiplying the annual payments by a fraction, the numerator of which is the number of whole months during that period in which services were not rendered, and the denominator of which is 12. In the case of quarterly payments, this amount shall be determined by multiplying the quarterly payment by a fraction, the numerator of which is the number of whole months during that period in which services were not rendered, and the denominator of which is 3.

## Section D. Transfer of the Trust Estate and the Trust Files

A Trustee that resigns or is removed shall transfer and deliver to its successor the then-existing entire Trust Estate in its possession, along with all Trust documents and records in its possession. Upon such transfer, the Trustee shall be discharged as Trustee of the Trust and shall have no further powers, discretion, rights, obligations, or duties with reference to the Trust Estate, and all such powers, discretion, rights, obligations, and duties of the resigning Trustee shall inure to and be binding upon such successor Trustee.

An Administrator that resigns or is removed shall transfer and deliver to its successor the then-existing Trust documents and records in its possession.

The foregoing notwithstanding, nothing contained in this Section D shall be deemed to discharge or release any Trustee or Administrator that resigns or is removed from liability for its acts or omissions.

## ARTICLE XII
## SUCCESSOR TRUSTEE OR ADMINISTRATOR

### Section A. Appointment of Successor Trustee or Administrator

In the event the Trustee or the Administrator resigns, refuses or is unable to act, or is removed, the Grantor shall appoint in writing a successor within sixty days of receiving written notice of resignation or within sixty days of removal, upon consultation with the Beneficiary.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO : I. K. A.     04/24/2017)

## Section B. Qualifications of a Successor Trustee

A successor Trustee appointed pursuant to this Article XII shall be a corporate Trustee, shall be duly licensed to act in that capacity, and shall have a combined capital and surplus equal to or exceeding that of the predecessor Trustee unless the Grantor and Beneficiary agree in writing to a lesser combined capital or surplus.

## Section C. Duties, Rights, Responsibilities, and Powers of Successors

A successor Trustee or Administrator shall have all the duties, rights, responsibilities, and powers provided by the Trust.

## Section D. Liability of Successors

A successor Trustee or Administrator shall not be liable or responsible in any way for the acts or omissions of any predecessor Trustee or Administrator or for any loss or expense occasioned by any act or omission of any such predecessor. The successor Trustee or Administrator shall be liable for its own acts or omissions in respect to property actually received or duties, responsibilities, and powers assumed by it as the successor. The foregoing notwithstanding, nothing contained in this Section D shall be deemed to discharge or release any predecessor Trustee or Administrator from liability for its acts or omissions.

## ARTICLE XIII
## COMPENSATION OF THE TRUSTEE AND THE ADMINISTRATOR

The Trustee shall receive as compensation for its services such commissions and fees as are payable in accordance with its schedule of commissions and fees in effect from time to time during the period in which its services are rendered, but shall not include any fees for the types of services being rendered by the Administrator unless the Trustee has also been appointed as the Administrator, in which case the fee schedule that applies to the performance of both appointments shall apply. The Trustee's compensation may not be changed without prior written approval of the Grantor. The Administrator shall receive as compensation for its services such compensation as is payable in accordance with its schedule of fees in effect from time to time during the period in which its services are rendered unless the Administrator has also been appointed as the Trustee, in which case the fee schedule that applies to the performance of both appointments shall apply. The Administrator's compensation may not be changed without prior written approval of the Grantor.

## ARTICLE XIV
## BOND EXCUSED

The Trustee and any successor Trustee shall not be required to give bond or any other undertaking for the faithful performance of its duties hereunder, any law to the contrary notwithstanding.

## ARTICLE XV
## SPENDTHRIFT PROVISION

No title or interest in the money or other property constituting the Trust Estate, or in any income accruing therefrom or thereon, shall vest in the Beneficiary during the continuance of the Trust Estate. The Beneficiary shall have no right, power, or authority to anticipate any income of the Trust Estate, payments into the Trust Estate, or any payments from the Trust Estate; or to alienate, convey, transfer, or dispose of the same or any interest therein or any part thereof in advance of payment. None of the principal or income of the Trust Estate, payments into the Trust Estate, nor any payments from the Trust Estate shall be involuntarily alienated by the Beneficiary or be subject to attachment, execution, or levy, or taken upon any process for any debts that the Beneficiary may have contracted, or in satisfaction of any demands or obligations that the Beneficiary may have incurred.

## ARTICLE XVI
## NOTIFICATION REQUIREMENTS

All notices, statements, statements of account, objections, filings, service of legal papers, and mailings required or permitted by the provisions of the Trust shall be in writing and shall be sent, on a timely basis, to the following addresses or, upon written notice, any subsequent change of address:

> GRANTOR:
> Director, Torts Branch (FTCA Staff)
> Civil Division
> United States Department of Justice
> P.O. Box 888
> Benjamin Franklin Station
> Washington, D.C. 20044
> (202) 616-4400
> (202) 616-5200 (facsimile)
> TRUSTEE:
> The Irrevocable Reversionary Inter Vivos
> Medical Care Trust FBO    I. K. A.

PeoplesBank, A Codorus Valley Company
105 Leader Heights Road
York, PA 17403
1-888-846-1970

ADMINISTRATOR:
Medical Fund Advisors
127 John Robert Thomas Drive
P.O. Box 1501
Exton, PA 19341
1-800-359-0048

BENEFICIARY:
I. K. A.
864 Greenbrook Street
Las Vegas, NV 89110
702-499-1784

The Trustee, the Administrator, the Grantor, and the Beneficiary shall each be responsible for providing each other with timely written notice of any change in address or phone number. The Beneficiary shall give timely written notice of a guardianship or conservatorship or change thereof. The Beneficiary's legal representative shall provide to the Administrator, the Trustee, and the Grantor (1) notice of the death of the Beneficiary within ten (10) days of the date of death and (2) a certified death certificate within sixty (60) days of the death. Notification shall be deemed given when posted by regular United States mail addressed to the last known address. Service of any legal papers shall comply with the rules of the Court in which the action or proceeding is filed and shall be made upon all parties to the Trust at the addresses provided above or any subsequent change of address that has been provided, unless a party is represented by counsel, in which case service shall be upon counsel.

## ARTICLE XVII
## FORUM FOR DISPUTES AND APPLICABLE LAW

Section A.     Dispute Resolution and Court of Competent Jurisdiction

If a dispute arises over the terms or administration (including investments) of the Trust, the Grantor, Trustee, Administrator, and Beneficiary shall first try to resolve the dispute informally among themselves before litigating the matter. If the dispute cannot be resolved informally, the Grantor, Trustee, Administrator, or Beneficiary may have the dispute resolved by any state Court (which shall not include Tribal Courts) or federal Court of competent jurisdiction. However, such state Court or federal Court shall not have the right to alter, amend, or change the terms or conditions of the Trust. Any fees (including attorney's fees or

guardian/conservator fees), expenses, or costs incurred by the Grantor or the Beneficiary in resolving any dispute arising under the Trust shall not be a proper charge against the Trust Estate; however, the Court may order payment of costs, fees, and expenses to the extent otherwise authorized by law.

## Section B.    Applicable Law

The Trust is a federal contract and is to be construed according to federal law. To the extent not contrary to the terms and conditions of the Trust, the duties of the Administrator shall be construed according to the laws of the state in which the Administrator is domiciled and the duties and powers of the Trustee shall be construed according to the laws of the state in which the Trustee is domiciled. However, notwithstanding any state or federal law to the contrary, no Court shall have the right to alter, amend, or change the terms or conditions of the Trust.

## ARTICLE XVIII
## REVOCATION OR AMENDMENT

The Trust is irrevocable and the terms shall not be amended, modified, altered, or changed in any respect.

## ARTICLE XIX
## TERMINATION OF THE TRUST

## Section A.    Terminating Event

For purposes of the Trust, the "terminating event" shall be defined as the death of the Beneficiary or when the Trust Estate becomes Zero Dollars ($0.00) and there are no income or annuity payments due in the future, whichever occurs first. Upon the occurrence of either terminating event, the Trust shall be deemed terminated.

## Section B.    Payments Authorized After Terminating Event

Upon the death of the Beneficiary, the Trustee shall pay any allowable benefits authorized by the Administrator to the extent there are sufficient funds in the Trust Estate, provided that the goods or services for which payment is requested were incurred before the date of the Beneficiary's death and provided further that the request for payment was properly submitted to the Administrator for review within ninety days of the date of the death of the Beneficiary. The Administrator shall not authorize and the Trustee shall not pay any expense that was not properly submitted to the Administrator within ninety days of the date of the death of the Beneficiary. In the event any allowable benefit is payable on a monthly basis, the Trustee shall pay only the pro rata share for the month of the Beneficiary's death. The Trustee shall also pay any expenses of management and administration, including the fees of the Trustee and

Administrator. In the event there are insufficient funds to pay both the expenses of management and administration and allowable benefits, the Trustee shall first pay the expenses of management and administration. The Administrator shall not authorize and the Trustee shall not pay for burial or funeral expenses.

**Section C. · Distribution of the Trust Estate**

After the Trustee has paid all allowable benefits incurred before the date of the Beneficiary's death and properly submitted to the Administrator within ninety days of the date of death of the Beneficiary, along with all taxes, assessments, expenses, and charges incident to the management and administration of the Trust and the Trust Estate, the Trustee shall expeditiously liquidate and distribute the remaining Trust Estate, including any current and accumulated income, to the Grantor by check made payable to the United States Treasury FBO David William Jones and delivered to the Grantor at the address on record with the Trustee, along with a final statement of account. Upon making this final distribution and accounting to the Grantor, the Trust shall be deemed terminated and the Trustee shall immediately close the account.

## ARTICLE XX
## SIGNATURES

It is contemplated that the Trust may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this _____ day of _____ 2017.
**GRANTOR: UNITED STATES OF AMERICA**


By: _____
       Lindsy M. Roberts
       Attorney for the United States

Executed this _3rd_ day of _May_ 2017.

**TRUSTEE: PEOPLESBANK, A CODORUS VALLEY COMPANY**

By: _Bonnie A. Gill, VP_

Executed this 2nd day of May, 2017.
ADMINISTRATOR: MEDICAL FUND ADVISORS, INC.

By:

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO  I. K. A.   (04/24/2017)

Executed this 3ʳᵈ day of May 2017.

I.K.A     /a minor, Individually

Date of Birth: April 3, 2014

By: _M L L_____
   Marco Antonio Aguilar, as natural guardian and parent of  I.K.A

Executed this 3ʳᵈ day of May 2017.

I.K.A.     /a minor, Individually

Date of Birth: April 3, 2014

By: _Ololba Aguilar_____
   Ollala Kendy Aguilar, as natural guardian and parent of   I.K.A.

Executed this 3rd day of May 2017.
MARCO ANTONIO AGUILAR, INDIVIDUALLY

_____
Marco Antonio Aguilar, Individually

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO     I.K.A.     (04/24/2017)

Executed this 3ʳᵈ day of May, 2017.
OLLALA KENDY AGUILAR, INDIVIDUALLY


_Ollala Aguilar_
Ollala Kendy Aguilar, Individually

Executed this _3rd_ day of _May_ 2017.

**APPROVED BY ATTORNEYS FOR BENEFICIARY AND PARENTS OF THE BENEFICIARY**

THE GAGE LAW FIRM, PLLC

By: _____

Ivy Gage, Esq.

Attorney for Beneficiary and Parents of the Beneficiary